UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY WALKER, JR.,

                Plaintiff,        Civil Action No. 16-10669
                                       Honorable Sean F. Cox
                                       Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**AMENDED REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 17]**

Plaintiff Anthony Walker, Jr. ("Walker") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties filed summary judgment motions [14, 17], which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On February 21, 2017, the undersigned issued a Report and Recommendation ("R&R") recommending that the case be remanded. (Doc. #19). As discussed below, the matter has been returned to the undersigned for further consideration. (Doc. #21).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Walker is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [17] be GRANTED, Walker's Motion for Summary Judgment [14] be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On September 17, 2012, Walker filed an application for SSI, alleging disability as of February 1, 2006.[1] (Tr. 206-12, 232). This application was denied initially on December 3, 2012. (Tr. 96-99). Walker filed a timely request for an administrative hearing, which was held on July 25, 2014, before ALJ Patricia Witkowski Supergan. (Tr. 37-76). Walker, who was represented by attorney Barry Keller, testified at the hearing, as did medical expert Sai Nimmagadda, M.D. and vocational expert Amanda Ortman. (*Id.*). On September 4, 2014, the ALJ issued a written decision finding that Walker is not disabled under the Act. (Tr. 24-33). On December 23, 2015, the Appeals Council denied review. (Tr. 1-5). Walker timely filed for judicial review of the final decision on February 24, 2016. (Doc. #1).

### B.     Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

---

[1] As the ALJ noted, "[SSI benefits are] not payable prior to the month following the month in which the application was filed." (Tr. 24). Therefore, despite the alleged disability onset date, the most relevant period is the date when Walker filed his application through the date the ALJ issued his decision. *Wade v. Colvin*, No. 15-CV-12750, 2016 WL 4191741, at *1 n. 1 (E.D. Mich. Aug. 9, 2016); *Martin v. Comm'r of Soc. Sec.*, No. 12-14773, 2014 WL 1048150, at *15 (E.D. Mich. Mar. 18, 2014) ("the relevant date for determining whether a claimant is disabled, and thus eligible to receive SSI benefits, is the filing date of her application") (quoting SSR 83–20, 1983 WL 31249, at *7 (explaining that for successful SSI benefits claimants, "[o]nset will be established as of the date of filing provided the individual was disabled on that date")).

>Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
>Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
>Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.  Background**

    *1.  Walker's Reports and Testimony*

Walker alleges disability as a result of a mental impairment and a learning disability. (Tr. 243). During a September 19, 2012, face-to-face interview, the claims examiner noted that Walker had difficulty reading, understanding, concentrating, talking, answering, and with coherency. (Tr. 234). The claims examiner further stated: "Claimant looked lost and alleged that he is slow. Claimant took a long time reading the SSI application, talked slowly and needed time to answer the face-to-face questions." (*Id.*).

3

Walker graduated from high school, taking special education classes, but has had no further schooling or training. (Tr. 44, 244). He lives in an apartment with his mother, father, and younger sister. (Tr. 44, 252). At the time of the administrative hearing, he was working three days a week (six hours a day) at Goodwill, sorting clothes, under the supervision of a job coach. (Tr. 43, 51). He does not have a driver's license, so his mother gives him a ride to work. (Tr. 43, 47, 255).

Walker is able to microwave previously-prepared meals, clean his room, and "watch [his] little sister." (Tr. 44-45, 254-55). He is unable to pay bills, count change, or handle a savings or checking account because he has "trouble with numbers." (Tr. 255). He testified that he drinks alcohol whenever he can. (Tr. 47). He has no friends, has never dated, does not go out socially, and spends most of his free time watching television at home. (Tr. 48, 50). He cannot read a newspaper but can read books a "little bit." (Tr. 53).

### 2. *Medical and Educational Evidence*

The Court has thoroughly reviewed Walker's medical and educational records. In lieu of summarizing that evidence here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Amanda Ortman testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 62-75). The ALJ asked the VE to imagine a claimant of Walker's age, education, and work experience who can perform work at all exertional levels, with the following non-exertional limitations: can perform unskilled work tasks that can be learned by demonstration or in 30 days or less of a simple, repetitive, and routine nature; job involves only occasional decision-making, occasional changes in the work setting, no strict production quotas

or fast pace, and no conveyor belt jobs (but he can meet production goals); can have no contact with the general public; can have occasional interaction with supervisors and coworkers; and can have no shared or tandem tasks. (Tr. 63-64). The VE testified that the hypothetical individual would be capable of working in the jobs of laundry laborer (7,300 jobs in the state of Michigan), kitchen helper (9,000 jobs), and sorter (16,000 jobs). (Tr. 64-65).

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Walker has not engaged in substantial gainful activity since September 17, 2012 (the application date). (Tr. 26). At Step Two, the ALJ found that Walker has the severe impairments of borderline intellectual functioning and a learning disability. (*Id.*). At Step Three, she found that Walker's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then found that Walker retains the residual functional capacity ("RFC") to perform work at all exertional levels, with the following non-exertional limitations: can perform unskilled work tasks that can be learned by demonstration or in 30 days or less of a simple, repetitive, and routine nature; job involves only occasional decision-making, occasional changes in the work setting, no strict production quotas or fast pace, and no conveyor belt jobs (but he can meet production goals); can have no contact with the general public; can have occasional interaction with supervisors and coworkers; and can have no shared or tandem tasks. (Tr. 16).

At Step Four, the ALJ determined that Walker has no past relevant work. (Tr. 32). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Walker is capable of performing a significant number of jobs that exist in the national economy. (*Id.*). As a result, she found that Walker is not disabled under the Act. (Tr. 33).

### E.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health*

*& Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

    *1.     The Court's Prior R&R*

On February 21, 2017, the undersigned issued its R&R, concluding that the ALJ's Step Three finding – that Walker's impairments did not meet or medically equal Listing 12.05(C)[2] – was not supported by substantial evidence. (Doc. #19). At issue was whether Walker had provided evidence of a *valid* verbal, performance, or full scale IQ of 60 through 70, as required by the Listing. The Court's concern was that while the record included a 1998 IQ test score of 58 (at age 5), a 2002 score of 60 (at age 9), and a 2005 score of 61 (at age 12) (in addition to a 2009 score of 74 (at age 17)) (Tr. 287-88), the ALJ's sole analysis of the issue was: "[T]he 'paragraph C' criteria of listing 12.05 are not met because [Walker] does not have a valid verbal,

---

[2] To show an intellectual disability under Listing 12.05(C), a claimant must satisfy all of the following requirements: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22"; (2) "a valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

performance, or full scale IQ of 60 through 70." (Doc. #19 at 8, 10) (quoting Tr. 28). Accordingly, the Court wrote that there was "little dispute that Walker's IQ scores satisfy the requirements of Listing 12.05(C)…" (Doc. # 19 at 10).

On February 28, 2017, the Commissioner filed objections to the R&R, arguing that Walker "had not challenged the ALJ's step three finding" and, therefore, this argument was waived. (Doc. #20 at 2, n. 2). The Commissioner also argued that Walker's only "valid" IQ scores in the record were the ones conducted between December 2009 and January 2010 (when he was 17), which, as noted above, resulted in a full scale IQ of 74, thus exceeding the Listing's 60-70 threshold. (*Id.* at 2-3). The Commissioner reasoned that Walker's earlier (and within threshold) IQ scores are not "valid" for purposes of evaluating whether Walker satisfies Listing 12.05(C) because they were obtained when he was between 5 and 12 years old, and therefore violate the temporal limitation contained in 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 112.00(D)(10) ("IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above. IQ test results obtained before age 7 are current for . . . 1 year if at 40 or above.").

Walker did not respond to the Commissioner's objections, and on June 26, 2017, the Honorable Sean F. Cox entered an Order returning this matter to the undersigned. (Doc. #21). As a result, on July 4, 2017, the undersigned issued an order, noting that Walker had not responded to the Commissioner's objections and offering him an opportunity to respond to the Commissioner's arguments that he waived any Step Three argument, and does not, in any event, satisfy Listing 12.05(C) because he has no evidence of a "valid" IQ score between 60 and 70. (Doc. #22). Again, Walker filed no response.

While the Court could find Walker's continued silence constitutes a waiver of the issue,

8

even if the Court were to consider the merits of the issue, it would find the Commissioner's argument to be correct. Read as a whole, the relevant Listings and regulations make clear that Walker's older IQ scores, obtained when he was between the ages of 5 and 12, do not constitute "valid" scores through which he could meet Listing 12.05(C) as an adult.

> 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 112.00(D)(10) provides:
>
>> Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above.

At least part of the reasoning behind these standards is that "[t]est results obtained at younger ages are less reliable and valid than test results obtained at older ages." Program Operations Manual System ("POMS") § DI 24515.055(A). The Commissioner argues that although the foregoing regulation is found solely within the listings for children under 18, it still applies to claims under the adult listings. (Doc. #20 at 3-4). This argument makes good sense; if a child's IQ score is deemed too unreliable to be "valid" for more than two years when reviewing the record against a *listing for children*, it would be illogical to find the same test score of value (or "valid") in reviewing the record against the *adult version of the same listing* many years later. The Sixth Circuit has agreed with this reasoning. *See Crum v. Comm'r. of Soc. Sec.*, 660 F. App'x 449, 455 (6th Cir. 2016) (finding that in reviewing disability application of twenty-two year old claimant, IQ tests taken when claimant was younger than sixteen years old were "valid only for two years."). *See also Higgins v. Barnhart*, 42 F. App'x 846, 850 (7th Cir. 2002) ("because Higgins was younger than 16 when she took the 1987 IQ test, the results were diagnostically valid only for two years . . ."). Accordingly, the ALJ did not err with respect to this issue.

9

### 2. *The Parties' Summary Judgment Arguments*

Having resolved the sole issue raised in the Commissioner's objections, the Court turns to the other issues raised in the parties' cross-motions for summary judgment. In his motion for summary judgment, Walker argues that the ALJ erred in: (1) failing to find his major depressive disorder to be a severe impairment; (2) evaluating his subjective complaints; (3) giving "great weight" to the opinion of the medical expert, Dr. Nimmagadda; and (4) failing to consider the records of his treating physician, Dosyng Yoon, M.D. (Doc. #14 at 7-8). Each of these arguments is addressed below.

#### a. *Any Error in Assessing Walker's Severe Impairments at Step Two is Harmless*

At Step Two of the sequential analysis, the ALJ found that Walker has two severe impairments – borderline intellectual functioning and a learning disability. (Tr. 26). Walker now argues that the ALJ erred in ignoring his diagnosis of major depressive disorder and in failing to find this condition to be a severe impairment.[3] (Doc. #14 at 7-8).

The records show that, beginning in June 2014, Walker sought psychiatric treatment at Community Network Services. (Tr. 308-23). At Walker's initial evaluation, psychiatrist Dosyng Yoon, M.D. noted that Walker reported feeling depressed because he "doesn't have a social life," "has trouble sleeping at night," and "cannot get out to have fun because he has no friends." (Tr. 308). On mental status examination, Walker's attitude was aloof; his mood was depressed; his affect was constricted; and he reported delusions and auditory hallucinations. (Tr. 309-10). Dr. Yoon diagnosed Walker with major depressive disorder, recurrent, severe, and learning disorder,

---

[3] The Commissioner argues that the Court should find this argument waived because Walker "does not cite to the record or otherwise show how the ALJ erred." (Doc. #17 at 11). While Walker's arguments could have been better presented, he does cite to records wherein he was diagnosed with major depressive disorder. (Doc. #14 at 8 (citing Tr. 314, 321)). Thus, the Court will consider the merits of this argument.

and assigned him a Global Assessment of Functioning[4] ("GAF") score of 35. (Tr. 314). Additionally, he prescribed three psychotropic medications – Prozac, Risperdal, and trazodone – and recommended that Walker undergo therapy. (Tr. 313). At his next visit to Dr. Yoon, on July 28, 2014, Walker again reported that he was "not sleeping good," "hearing voices," and that he was "scared of people." (Tr. 316). On examination, his mood was dysphoric and his affect was blunt. (Tr. 319). His diagnoses and GAF score remained the same. (Tr. 322).

The Commissioner argues that "any error in the ALJ's failure to include major depressive disorder among [Walker's] severe impairments was harmless." (Doc. #17 at 11). It is true that an ALJ's determination that a particular condition is non-severe generally is harmless where the ALJ found the existence of other severe impairments and proceeded to Step Three, as happened here. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In this case, although Dr. Yoon diagnosed major depressive disorder, he did not opine as to – and Walker does not allege – any functional limitations resulting from this impairment. Indeed, Dr. Yoon specifically noted that Walker had normal attention and concentration and adequate impulse control, insight, and judgment (Tr. 310, 321), and Walker did not testify to any limitations resulting from depression (Tr. 43-56). As such, Walker has shown no error in the ALJ's failure to find his major depressive disorder severe at Step Two. *See, e.g., Funderburg v. Comm'r of Soc. Sec.*, 2016 WL 6122459, at *4 (E.D. Mich. Feb. 5, 2016) (no error in ALJ's failure to find claimant's hypertension to be a severe impairment, or to explicitly mention this condition at later steps of the sequential analysis, where there were no opinions from treating physicians indicating that this condition caused him any functional limitations).

---

[4] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

### b.     The ALJ's Assessment of Walker's Subjective Complaints is Supported by Substantial Evidence

Walker also argues that the ALJ erred in evaluating his subjective complaints. (Doc. #14 at 7). Courts have recognized that determinations of credibility related to a claimant's subjective complaints rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must then consider other evidence of pain, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any means used to relieve pain; and (7) other factors concerning functional limitations. *See* 20 C.F.R. § 416.929(c)(3).

Here, the ALJ found that Walker's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, she also found that Walker's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. 29). The ALJ articulated several reasons for this finding, each of which is supported by substantial evidence, as summarized below:

- First, the ALJ noted that no treating or examining physician ever indicated that Walker had greater limitations than the ALJ assessed. (Tr. 31). This was an appropriate consideration. *See, e.g., Viera v. Comm'r of Soc. Sec.*, 2014 WL 7338736, at *2-3 (E.D. Mich. Dec. 22, 2014) (upholding negative credibility assessment based in part on the fact that no treating or examining physician had opined as to the claimant's limitations).

12

- The ALJ also noted that there was "very limited" evidence in the record. (Tr. 31). Indeed, Walker's post-application treatment notes consist only of a consultative examination at the request of the agency (Tr. 296-305) and two visits to Dr. Yoon in the summer of 2014 (Tr. 306-23). It was appropriate for the ALJ to conclude that this level of treatment does not suggest disabling symptoms. *See Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *7 (July 2, 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints ….").

- The ALJ also found that the objective medical evidence in the record did not support Walker's allegations of disability. (Tr. 31). Specifically, despite a cognitive impairment, the consultative examiner, Dawn Bane Gventer, Psy.D., noted that Walker could recall five numbers forward and four in reverse, recall two of three words after a five-minute delay, and perform serial sevens and simple math. (Tr. 303). Likewise, Dr. Yoon observed normal attention and concentration and adequate impulse control, insight, and judgment. (Tr. 310, 321). Thus, the ALJ properly discounted Walker's subjective complaints as inconsistent with the objective medical evidence. *See* 20 C.F.R. § 416.929(c)(2) (objective medical evidence is a "useful indicator" when assessing subjective complaints).

- The ALJ also noted that Walker's activities of daily living were inconsistent with his allegations of disability. (Tr. 31). Walker admitted to attending to his personal care, preparing simple meals, cleaning up around the house, shopping, watching television, writing, playing sports,[5] using a cell phone, and watching (or at least being responsible for) his 10-year old sister five days a week while his parents were out working. (Tr. 44-46, 50, 55, 253-56, 302). Thus, this factor too supports the ALJ's evaluation of Walker's subjective complaints. *See* 20 C.F.R. § 416.929(c)(3)(i).

- Finally, the ALJ properly cited Walker's part-time work as another reason to discount his subjective complaints. (Tr. 31). Walker testified that he worked three days per week, six hours per day (though almost eight hours on Fridays), and that he did not work full-time only because the job did not allow it. (Tr. 53-54). This was an appropriate consideration. *See Caldwell v. Comm'r of Soc. Sec.*, 2016 WL 4150031, at *11 (E.D. Mich. June 30, 2016) (finding that the ALJ properly concluded that part-time work undercut the claimant's credibility).

Walker has not challenged *any* of the reasons articulated by the ALJ for discounting his subjective complaints; instead, he simply asserts – without support – that the ALJ's failure to explicitly discuss his diagnosis of major depressive disorder renders her credibility finding

---

[5] Although Walker testified at the hearing that he did not play sports, he told the consultative examiner that he did. (Tr. 48, 302).

13

unsupported. (Doc. #14 at 7). As set forth above, however, *supra* at 10-11, Walker has failed to show how a discussion of depression would have affected the outcome of his claim. Here, where the ALJ set forth several reasons for discounting Walker's subjective complaints, all of which are supported by substantial evidence, the Court finds no error warranting remand.

        *c.*  *The ALJ's Consideration of the Medical Expert's Opinion is Supported by Substantial Evidence*

Walker next challenges the ALJ's assignment of "great weight" to the opinions of medical expert Sai Nimmagadda, M.D. (Doc. #14 at 7-8). Specifically, Dr. Nimmagadda opined at the administrative hearing that: (1) Walker has the medically determinable impairments of borderline intellectual functioning and a learning disability; (2) neither of these impairments meets or medically equals a listed impairment; and (3) Walker does not have any physical limitations. (Tr. 58).

In his motion for summary judgment, Walker asserts that the ALJ should have disregarded Dr. Nimmagadda's opinions because "they are not supported by competent and material evidence[.]" (Doc. #14 at 8). However, he fails to offer any further analysis or explanation of the ways in which he believes Dr. Nimmagadda's opinions to be insufficient.[6] As such, this argument is wholly undeveloped and could be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not

---

[6] Walker asserts in passing that Dr. Nimmagadda, who is board-certified in allergy, immunology, and pulmonary medicine, "was not qualified to discuss [his] GAF score of forty-five (45)." (Doc. #14 at 7). However, it was Walker's own attorney – not the ALJ – who questioned Dr. Nimmagadda about this GAF score. (Tr. 60). In response to this questioning, Dr. Nimmagadda acknowledged that Walker had been assigned a GAF score of 45, which he testified indicated severe limitations in functioning; however, Dr. Nimmagadda also testified that GAF scores can vary. (Tr. 60-62). Walker does not dispute the substance of this testimony, and he has provided no support for his assertion that Dr. Nimmagadda was unqualified to answer the questions posed by his own attorney.

sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal quotations omitted). Moreover, giving Walker the benefit of the doubt and considering the merits of this argument, Social Security regulations and Sixth Circuit case law make clear that a non-treating physician's opinion may receive greater weight than that of a treating physician when supported by the record evidence. *See* 20 C.F.R. § 416.927(c); *see also Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989) (a non-examining medical expert's opinion "based upon the objective evidence of medical reports made by the claimant's treating physicians and testimony given by the claimant himself," which is consistent with the evidence of record, can constitute substantial evidence to support an ALJ's decision). Here, where Walker has failed to identify any specific ways in which Dr. Nimmagada's opinions are insufficient or inconsistent with the record evidence, the Court finds no error in the ALJ's assignment of great weight to these opinions.

### d. The ALJ Properly Considered Dr. Yoon's Treatment Records

Finally, Walker argues that the ALJ erred in "failing to consider the medical opinions of Dr. Yoon," his treating psychiatrist, claiming that the ALJ "did not discuss or even acknowledge the treatment records and diagnosis provided by Dr. Yoon[.]" (Doc. #14 at 8). This argument, too, is without merit.

To begin with, contrary to Walker's claim, the ALJ expressly acknowledged and discussed Dr. Yoon's records. At the outset, the ALJ explained that "in rendering [her] decision," she considered evidence received from Dr. Yoon after the hearing. (Tr. 24 (citing Exhibit "4F," Tr. 315-23)). Elsewhere in her decision, the ALJ cited and discussed notes from Walker's visits to Dr. Yoon. (*E.g.*, Tr. 27 (citing Tr. 308-13), 29 (citing Tr. 313), 31 (citing Tr. 306-14)). Thus, Walker is incorrect in asserting that the ALJ "did not discuss or even

15

acknowledge the treatment records and diagnosis provided by Dr. Yoon[.]" (Doc. #14 at 8).[7]

Moreover, to the extent Walker argues that Dr. Yoon issued "medical opinions" that the ALJ "fail[ed] to consider" (*id.*), such an argument fails. Courts have recognized that there is "a difference between a treating physician's treatment notes or comments, and a treating physician's 'medical opinion.'" *Calloway v. Comm'r of Soc. Sec.*, 2016 WL 1165948, at *11 (E.D. Mich. Mar. 1, 2016). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Here, although Dr. Yoon diagnosed Walker with major depressive disorder, he did not opine as to any functional limitations resulting from this impairment, instead specifically noting that Walker showed normal attention and concentration and adequate impulse control, insight, and judgment. (Tr. 310, 321). As the Sixth Circuit has held, "the mere diagnosis of an impairment does not render an individual disabled nor ... reveal anything about the limitations, if any, it imposes upon an individual," *McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000). Thus, for essentially the same reasons stated above, *supra* at 10-11, Walker has shown no error warranting remand with respect to this issue.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.  CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion

---

[7] The law is also clear that "[a]n ALJ does not have to cite to every piece of evidence to show [he] considered it . . ." *Gower v. Comm'r of Soc. Sec.*, No. 13-14511, 2015 WL 163830, at *26 (E.D. Mich. Jan. 13, 2015).

for Summary Judgment [17] be GRANTED, Walker's Motion for Summary Judgment [14] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: July 27, 2017  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 27, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager